**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, 800 K Street, N.W., Suite 1000 Washington, D.C. 20001, <br><br> *Plaintiff,* <br><br> v. <br><br> INTERNAL REVENUE SERVICE 1111 Constitution Avenue, N.W. Washington, D.C. 20224, <br><br> U.S. DEPARTMENT OF THE TREASURY 1500 Pennsylvania Avenue, N.W. Washington, D.C. 20220, *and* <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES 200 Independence Avenue, S.W. Washington, D.C. 20201, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) Case No.: ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT FOR MANDAMUS, INJUNCTIVE,**
**AND DECLARATORY RELIEF**

1.　This is a case about indifference: two federal agencies' apathy toward their employees' medical needs and those agencies' disregard for the Rehabilitation Act and related regulations requiring employers to review and process requests for reasonable accommodations from workers with disabilities. This case urges judicial action to remedy the agencies' failure to perform the threshold procedural steps that federal law and the agencies' own internal policies require when employees with

disabilities submit requests for reasonable accommodation.

2.      Rather than review reasonable accommodation requests as required, the Internal Revenue Service (IRS), the Department of the Treasury, and the Department of Health and Human Services (HHS) (together, the Defendants), have instead failed to process thousands of employees' requests entirely.

3.      By failing to process reasonable accommodation requests, the Defendants have caused these federal employees to exhaust leave they cannot afford to lose, to lose pay, and to report to worksites while their requests remain pending.

4.      The Defendants' failure to process requests for reasonable accommodations has also wrongfully compelled some employees to disclose sensitive medical information to their supervisors, to face AWOL notices, and to leave federal employment because, in many cases, they cannot obtain even a timely acknowledgement of their pending request.

5.      Where requests have not been completely ignored, the Defendants have subjected employees to review processes so backlogged and opaque that, for practical purposes, the required processing steps remain unavailable to employees.

6.      Failing to process employees' requests for reasonable accommodations violates federal law requiring agencies to adopt and implement procedures that ensure requests are routed, reviewed, and resolved in accordance with agency-established procedures and timelines. *See* 29 U.S.C. § 791(b); 29 C.F.R. § 1614.203(d)(3)(i)(A)–(W).

7.      Failing to process employees' requests also violates federal regulations that mandate agencies to maintain reasonable accommodation procedures with basic requirements that ensure promptness, clarity, and accessibility. *See* 29 C.F.R. § 1614.203(d)(3)(i)(A)-(W).

8.      Moreover, and as described in greater detail below, failing to process employees' requests violates the Defendants' own internal procedures.

9.      The Defendants are failing to administer even basic threshold steps required by law, regulations, and their own internal procedures, such as acknowledging receipt of requests, routing requests to a designated Reasonable Accommodation Coordinator (RAC), communicating with employees throughout the request process, resolving requests promptly, or considering interim accommodations while requests are under review.

10.     This case does not challenge the denial of specific reasonable accommodation requests or the wisdom of the Defendants' new procedures. Instead, this case demands the Defendants process requests as required by the Rehabilitation Act, federal regulations, and the agencies' internal procedures.

11.     The National Treasury Employees Union (NTEU) brings this action against the IRS, Treasury, and HHS seeking mandamus relief and relief under the Administrative Procedure Act (APA). NTEU asks this Court to order the agencies to perform the discrete, required processing duties identified below.

## JURISDICTION

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act (APA) and section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.

13.    The APA waives sovereign immunity for this action seeking relief other than money damages. 5 U.S.C. § 702. Section 706(1) authorizes a reviewing court to compel agency action unlawfully withheld or unreasonably delayed.

14.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1361, as it is an action "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

## VENUE

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because the Defendants are federal agencies. A substantial part of the events or omissions giving rise to the claims herein occurred in this district and all parties may be found within the district.

## PARTIES

16.    Plaintiff NTEU is an unincorporated association with its principal place of business at 800 K Street, N.W., Washington, D.C. 20001. It is a labor organization that represents thousands of IRS and HHS employees. NTEU negotiates collective bargaining agreements with federal employers, supports legislation that improves the working lives of federal employees, and engages in

general advocacy for federal employees' rights. NTEU's mission is "[t]o organize federal employees to work together to ensure that every federal employee is treated with dignity and respect."[1]

17.    NTEU brings this suit on behalf of its members who have been injured by the inaction and violations of law described in this Complaint, including the Defendants' failure to route employees' reasonable accommodation requests to a designated RAC in a timely fashion; the agencies' failure to answer those requests; their failure to communicate with employees in a prompt and periodic manner as required by law; and their failure to apply their interim accommodation procedures.

18.    The employees identified below are members of NTEU. At least one identified member at each Defendant agency has a request that remains pending and has not received one or more of the threshold processing steps described in this Complaint.

19.    Defendant IRS is a bureau within the Department of the Treasury that is headquartered at 1111 Constitution Avenue, N.W., Washington, D.C. 20224. The IRS is responsible for collecting taxes and enforcing internal revenue laws. As an employer, the IRS is required to adopt and implement reasonable accommodation procedures.

20.    Defendant Treasury is a cabinet-level department of the U.S. government that is headquartered at 1500 Pennsylvania Avenue, N.W., Washington D.C. 20220. Treasury is responsible for promoting economic prosperity and ensuring

---

[1] Who We Are, NTEU, https://www.nteu.org/who-we-are.

the financial security of the United States. As an employer, Treasury is required to adopt and implement reasonable accommodation procedures.

21.    Defendant HHS is a cabinet-level department of the U.S. government that is headquartered at 200 Independence Avenue, S.W., Washington, D.C. 20201. HHS is responsible for the nation's public health, health care, and social services. As an employer, HHS is required to adopt and implement reasonable accommodation procedures.

## STATEMENT OF CLAIMS

## I.    REASONABLE ACCOMMODATIONS UNDER FEDERAL LAW

### A.    Federal Law Requires Agencies to Adopt and Implement Plans for Reviewing Reasonable Accommodation Requests, Including Requests for Telework.

22.    Passed by Congress in 1973, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, requires federal agencies to operate as model employers for individuals with disabilities and to maintain plans for reviewing reasonable accommodation requests.

23.    Section 501 of the Rehabilitation Act establishes that the government must take reasonable affirmative steps to allow people with disabilities equal access to the benefits and privileges of employment, except where the government can demonstrate that doing so would pose an undue hardship. *See* 29 U.S.C. § 791; 29 C.F.R. § 1614.203(d)(3)(ii).

24.     Pursuant to section 501, agencies are required to maintain procedures through which accommodation requests are evaluated—a duty that exists independently of the outcome of any individual request.

25.     29 C.F.R. § 1614.203 further provides that agencies "shall adopt and implement" a reasonable accommodation plan. The regulations require specific procedural content including prompt routing to decisionmakers, interim-accommodation consideration, documentation identification, medical-information protection, and written decisions. 29 C.F.R. § 1614.203(d)(3)(i)(A)–(W).

26.     The government has long recognized that allowing employees to work from home—to "telework" or "telecommute"—is a reasonable accommodation where the employee's disability prevents them from successfully performing their job on-site, and the job, or parts of the job, can be performed at home without causing significant difficulty or expense. *See* OPM.gov, *Telework & Reasonable Accommodations*, https://www.opm.gov/telework/tmo-and-coordinators/reasonable-accommodations/ (last visited Jun. 16, 2026).

27.     For years, the government has allowed disabled employees to telework as a reasonable accommodation.

### B.     In 2025 the Trump Administration Directed Agencies to Terminate Telework Arrangements.

28.     On January 20, 2025, President Trump issued a Presidential Memorandum titled "Return to In-Person Work," directing the heads of all federal departments and agencies to "as soon as practicable, take all necessary steps to terminate remote work arrangements and require employees to return to work in-

person at their respective duty stations on a full-time basis, provided that the department and agency heads shall make exemptions they deem necessary."

https://www.whitehouse.gov/presidential-actions/2025/01/return-to-in-person-work/

29. This short directive made no exception for those employees who had already been teleworking as a reasonable accommodation for a medical need at the time of the directive, nor any exception for disabled persons who had been hired for jobs that were advertised as telework positions (and thus were more likely to attract disabled candidates to apply).

30. Instead, the directive deferred all decisions regarding telework to department and agency heads' discretion.

31. Two days later, the Office of Personnel Management (OPM) issued guidance implementing the President's directive. *See* Memorandum from Charles Ezell, Acting Director, U.S. Office of Personnel Management to Heads and Acting Heads of Departments and Agencies (Jan. 22, 2025) (OPM Guidance).

32. The OPM Guidance told agency heads to "revise their agency's telework policy issued under 5 U.S.C. § 6502(a)(1)(A) to state that eligible employees must work full time at their respective duty stations unless excused due to a disability, qualifying medical condition, or other compelling reason certified by the agency head and the employee's supervisor."

33. OPM FAQs dated March 20, 2025, explained that, pursuant to joint OMB and OPM instructions, agencies were required to describe their processes for granting exemptions based on disability, qualifying medical condition, or other

8

compelling reasons in their return-to-office plans. *See* U.S. Off. of Pers. Mgmt.,

Answers to Frequently Asked Return to In-Person Work Implementation Questions

2 (Mar. 20, 2025); *see also* Off. of Mgmt. & Budget, Exec. Off. of the President &

U.S. Off. of Pers. Mgmt., *Memorandum on Agency Return to Office Implementation

Plans* 1–3 (Jan. 27, 2025).

34.     OPM's revised telework guide, issued nine months later, on December

31, 2025, reiterated that the default rule across the government was now full-time,

in-person work, but agencies were expected to incorporate disability-based

exemptions and related procedures into their telework policies. *See* U.S. Off. of Pers.

Mgmt., *Guide to Telework and Remote Work in the Federal Government* 3 (Dec.

2025).

35.     In February 2026, OPM and the Equal Employment Opportunity

Commission (EEOC) jointly advised agencies that they may reassess existing

telework accommodations, require supporting medical or other evidence, scrutinize

whether the accommodation is employment-related and sought in good faith, and

centralize review to ensure consistent compliance. U.S. Off. of Pers. Mgmt.,

*Memorandum on Frequently Asked Questions on Telework Accommodations for

Disabilities in the Federal Government* 2 (Feb. 11, 2026).

**C.     Treasury and the IRS Revised Their Policies for Reviewing
Reasonable Accommodation Requests and Telework.**

36.     In response to the OPM Guidance, on March 3, 2025, Treasury issued

a new policy mandating that employees return to in-person work and updating its

9

reasonable accommodation approval process for requests involving telework lasting longer than two weeks.

37.     Under Treasury's revised process, requests for more than two weeks of telework were subject to certification by the bureau head or designee at each bureau and were then to be submitted to the Deputy Secretary for review and approval. *Id.*

38.     Shortly after Treasury implemented the revised process, the Department's Office of Civil Rights and Equal Employment Opportunity (OCRE) identified a substantial backlog. On May 26, 2025, the Director of OCRE sent a memorandum to the Deputy Secretary about the enormous backlog of reasonable accommodation requests that had accumulated since Treasury issued its revised telework policy. *See* Memorandum from Snider Page, Dir., OCRE, to Michael Faulkender, Deputy Sec'y of the Treasury 1 (May 26, 2025) (OCRE Memo) (Attachment A).

39.     The OCRE Memo stated that "Treasury's bureaus have received over 6,500 reasonable-accommodation requests, largely from the [IRS]—most of which involved a request for telework/remote work." *Id.*

40.     It further stated that "IRS has a backlog exceeding 5,800 [reasonable accommodation] requests, many of which are several months old and far exceed the EEOC's processing timeframe and the Department's own policy standard" of processing requests within 20 calendar days from the date of receipt. *Id.* at 2.

41. The OCRE Memo recognized that "[t]hese delays place the Department at substantial legal risk and jeopardize its compliance with federal disability nondiscrimination laws." *Id.*

42. In order to mitigate Treasury's "increased liability risk associated with untimely delays in processing RA requests," *id.*, the OCRE Memo recommended certain strategies:

a. That Treasury establish a rapid response team "to triage documentation, prioritize aged and high-risk cases for review, prepare supervisors' decision memos, keep employees informed, and group similar cases for streamlined pre-screening by RA Coordinators for management approval." *Id.*

b. That Treasury allow bureau heads to approve telework and remote work requests greater than two weeks in certain instances, including when the employee requests an accommodation under the Pregnant Workers Fairness Act due to the birth of a child or related medical condition; when the requesting employee was hired under the non-competitive special hiring authority of Schedule A; when the employee requests less than 60 days of telework to recover from surgery or a medical procedure; when the employee suffers from a terminal illness; and when the employee is currently undergoing treatment for conditions like cancer or dialysis and requests less than six months of telework. *Id.* at 2–3.

    c.     That Treasury allow interim accommodations of up to 90 days of conditional telework until a final determination is rendered. *Id.* at 3.

    d.     That Treasury implement mandatory review timelines for IRS deciding officials (e.g., no more than three (3) business days for supervisors) who are presented with a RA case with medical documentation. *Id.*

43.    On June 23, 2025, Deputy Secretary Michael Faulkender issued a Reasonable Accommodation Guidance memo outlining Treasury's process for all reasonable accommodation requests for telework and adopting some of the OCRE Memo's recommended strategies. *See* Memorandum from Michael Faulkender, Deputy Sec'y, U.S. Dep't of the Treasury, to Bureau Heads & EEO Officers, U.S. Dep't of the Treasury 1 (June 23, 2025) (Faulkender Memo) (attached).

44.    The Faulkender Memo listed the following new procedures for reasonable accommodation requests for telework:

    a.     "All requests for RAs are required to be processed by the appropriate RA Coordinator (RAC), who will facilitate the interactive process with the employee's supervisor in accordance with 29 C.F.R. Part 1630." *Id.*

    b.     "Upon approval by the employee's supervisor, the appropriate RAC will submit the request to the Bureau Head for review and approval. Bureau Heads may not designate another Bureau Official to act on the Bureau Head's behalf for such RA requests." *Id.*

c. "Once approved by the Bureau Head, Bureau RACs will submit the approved request to the Office of Civil Rights and Equal Employment Opportunity (OCRE) via the RA Tracking spreadsheet to RTO-ReasonableAccommodations@treasury.gov. Submissions shall not include any employee identifying information or PII." *Id.*

d. "Mandatory review timelines are implemented for all deciding officials (e.g., no more than three (3) business days for supervisors to approve or deny a RA request) when presented with a [sic] RA case with completed medical documentation." *Id.*

45. The Faulkender Memo delegated approval authority to the bureau head or supervisor, without the need to forward cases to the Department for review, for the same categories of reasonable accommodation requests listed in the OCRE Memo. *Compare* Faulkender Memo at 1–2 *with* OCRE Memo at 2–3.

46. By instructing RACs to route their matters to Bureau Heads for review and approval (Bureau Heads who "may not designate another Bureau Official to act on the Bureau Head's behalf for such RA requests"), the Faulkender Memo required that all telework requests from IRS employees (that is, employees numbering over 100,000 people) be reviewed by one of only *seven* individuals at IRS.

47. On June 10, 2026, the IRS announced to its workforce that it was updating its accommodation request submission process in "IRWorks," the bureau's internal employee portal. This announcement included notice that "Form 13661"— the form employees were previously told to submit for RA requests—had been

13

"retired and the information previously captured through the form is now collected directly within the request submission" on the new IRWorks portal. The notice to employees did not contain any information about pending requests, specifically whether persons who had already submitted Form 13661 requests needed to resubmit their information. *See* E-mail from IRS Communications to All Employees (June 10, 2026, at 11:34 AM EST) (Attachment B).

## D.   HHS Revised Its Policies Regarding Reasonable Accommodation Requests for Telework.

48.   In response to the Trump Administration's directive and OPM Guidance, on September 15, 2025, HHS issued Human Resources Policy 126-1, establishing procedures for providing reasonable accommodations to employees with disabilities. Off. of Hum. Res., U.S. Dep't of Health & Hum. Servs., Policy 126-1, § 10 (HHS Policy 126-1). The policy superseded HHS's Reasonable Accommodations Policy and Procedures from 2012 and created a new Reasonable Accommodation Program (RAP) Office within HHS. *Id.* §§ 20, 30.

49.   As set forth in HHS Policy 126-1, after an employee submits a reasonable accommodation request, the request proceeds to the "Routing and Initial Processing" stage. *Id.* § 70(B). The first step in this stage is, "[w]ithin five calendar days of receipt, the Department or Component official who receives the request routes the request to the appropriate Decision Maker and/or [Reasonable Accommodation Coordinator (RAC)]." *Id.* § 70(B)(1). Next, the RAC "[i]nitiates processing as soon as possible, generally within three calendar days of receipt." *Id.* § 70(B)(2).

14

50.     After the Routing and Initial processing stage, the Interactive Process begins. *Id.* § 70(C). In this stage, the "Decision Maker and Requestor engage in timely, good-faith dialogue regarding the essential functions of the position and the functional limitations to identify adequate accommodations." *Id.*

51.     The Interactive Process also involves "[c]ontinuous communication: the employee and the supervisor must engage in periodic dialogue, even after a decision is issued, to evaluate ongoing effectiveness of the accommodation and implement modification, as applicable." *Id.* § 70(C)(3).

52.     HHS Policy 126-1 states that while a request is pending, the Decision Maker may provide interim accommodations that allow the Requestor to perform essential duties. *Id.* § 70(D)(1). It states that "[t]elework may only be provided as an interim accommodation when approved at the Assistant Secretary Level or by their designee." *Id.*

53.     HHS Policy 126-1 further states that while "medical documentation may by requested by the RAC when a disability and/or need for accommodation is not known or obvious," *id.* § 70(E)(1), the "Component may not request medical information where (a) both the disability and need for accommodation are obvious; or (b) the Requestor has already provided the Component with sufficient information to document the existence of a disability and their functional limitations related to the request." *Id.* § 70(E)(3).

II.    **The IRS and Treasury Have Failed to Perform the Duties that Federal Law and Their Own Reasonable Accommodation Procedures Mandate.**

54.    The IRS and Treasury are failing to meet the requirements of the Rehabilitation Act, federal regulations, and their own internal policies by failing to process some employees' telework-based accommodation requests, failing to facilitate an interactive process with RACs or supervisors, and failing to adhere to the "mandatory review timelines" as stated in the Faulkender Memo.

55.    These failures are adversely affecting numerous IRS employees who are NTEU members.

56.    One such employee is Benita Brown. Ms. Brown is an IRS Customer Service Representative in Jacksonville, Florida. She is a member of NTEU.

57.    Ms. Brown dislocated her knee in the parking lot at her worksite in April 2025 and as a result of that injury experienced mobility limitations affecting her commute.

58.    Ms. Brown requested, and was granted, an interim reasonable accommodation to telework through September 2025, but then received notice in July 2025 that her interim accommodation was rescinded. Ms. Brown then provided the IRS with additional paperwork from her doctors and submitted additional medical documentation but received no response.

59.    Ms. Brown was then advised by her supervisor to use leave under the Family and Medical Leave Act and annual leave, which she exhausted while

16

awaiting a decision from the IRS which never came. She has been marked AWOL since she exhausted her leave.

60.    In October 2025, IRS remotely disabled her access to her official IRS computer and email, thus denying her any avenue of contact with the persons she was told would assess her request to telework.

61.    At other IRS offices, managers have written communications to NTEU members announcing a blanket policy that all telework requests must be denied, regardless of the interim nature of the request or an obvious need for accommodation.

62.    Other NTEU members have also reported telework-based accommodation requests involving pregnancy-related and lactation-related needs that were not processed before the need for accommodation had passed. Their experiences further demonstrate that the agencies' failure to act does not merely postpone a decision; it can deprive employees of any meaningful opportunity to obtain timely consideration of a requested accommodation.

63.    After IRS's June 10, 2026, announcement that it was retiring Form 13661 and "enhanc[ing]" its request submission process in IRWorks, multiple employees inquired with management as to the status of their pending requests. Some were told that they did not need to resubmit their requests even though the portal told them their requests were "suspended." Others received notice that their prior requests had been "cancelled." Whether "suspended" or "cancelled," affected

17

employees have received no determination from their employer on their pending requests.

### III.   HHS has Failed to Perform the Duties Mandated by Its Own Reasonable Accommodation Procedures.

64.    HHS is similarly ignoring employees' telework-based reasonable accommodation requests contrary to federal law, regulations, and HHS's new internal procedures.

65.    Despite adopting a departmentwide reasonable accommodation policy mandating formal routing, processing, interim-accommodations, confidentiality, and decision requirements, *see* HHS Policy 126-1 §§ 20, 30, 60(E), 60(G)–(H), 70(A)–(B), 70(E)(4), 70(F)–(G), HHS's reasonable accommodation procedures are effectively unavailable or defunct.

66.    Across HHS, requests are not being routed; interim protections are categorically restricted or never considered at all; employees are being made to disclose medical information to their supervisors; and decisions do not issue for months, if at all, despite mandatory Agency timelines.

67.    Public reporting has described a practical shutdown of HHS's review processes, indicating that by April 2026, the new procedures have resulted in a departmentwide backlog of more than 9,000 requests. Jory Heckman, *HHS seeks employee reassignments to tackle months-long reasonable accommodation backlog*, Federal News Network (April, 21, 2026 6:55 EST), https://federalnewsnetwork.com/workforce/2026/04/hhs-seeks-employee-reassignments-to-tackle-months-long-reasonable-accommodation-backlog.

18

68. To address this backlog HHS has requested nominations for GS-12 and GS-13 employees to serve on 90 or 120-day detail assignments to process the backlog of reasonable accommodation requests. *Id.*

69. These failures are adversely affecting numerous HHS employees who are NTEU members.

70. One such employee is Shakira Williams, an Adolescent Pregnancy Prevention Program Specialist in the HHS Administration for Children and Families in Roanoke, Virginia. Ms. Williams is a member of NTEU.

71. Ms. Williams submitted a reasonable accommodation request for telework in February 2025, owing to post-traumatic stress disorder and related illnesses. More than a year later, that request remains pending.

72. In the interim, HHS denied a separate request for telework under the Pregnant Workers Fairness Act without providing an interactive discussion or explanation.

73. HHS has not engaged with Ms. Williams in the "timely, good faith dialogue" required by Policy 126-1, nor has she received "periodic" updates from her supervisors to evaluate her ongoing needs. Nor has she received any interim accommodations despite her documented disability and open request.

74. Another employee affected is Shazma Aftab, a Project Manager at HHS's Food and Drug Administration headquarters in Silver Spring, Maryland. Ms. Aftab is a member of NTEU.

19

75.    In March 2026, Ms. Aftab submitted a request for telework as a reasonable accommodation based on a chronic medical condition.

76.    Ten days later she received an automatically generated email informing her that she had been assigned a "Case ID," but as of June 29, 2026, no RAC has been assigned to her request. She has received no guidance from HHS as to whom she should submit the medical documentation she offered to provide weeks earlier, and no one has reached out to her to begin any "interactive process" as required by Policy 126-1.

77.    Ms. Aftab sent follow-up inquiries on April 27 and May 14 but she has received no response to her pending request.

### CAUSES OF ACTION

**Count I: The IRS, Treasury, and HHS are violating the APA by withholding and unreasonably delaying threshold steps in their reasonable accommodation processes.**

78.    NTEU realleges all preceding paragraphs and incorporates them herein.

79.    The APA authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

80.    Further, agencies must "conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

81.    The Defendants are unlawfully withholding and unreasonably delaying action mandated by section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which requires federal agencies to adopt and implement plans for providing equal

opportunity in employment for individuals with disabilities, including through reasonable accommodation procedures. *See* 29 U.S.C. § 791(f) (requiring agencies to meet ADA standards). The primary withheld action is the Defendants' failure to operate the procedural plans that section 501 and its implementing regulations 29 C.F.R. § 1614.203(d) require them to maintain.

82.    The IRS, Treasury, and HHS are also failing their nondiscretionary duty under 29 C.F.R. § 1614.203(d) to adopt and implement a reasonable accommodation plan that provides specific procedural content—including early and periodic communication with requestors, consideration of interim-accommodations, documentation requirements, protection of sensitive medical-information, and written decisions. 29 C.F.R. § 1614.203(d)(3)(i)(A)–(W).

83.    As described above, employees often receive no communication back from their employer at all after submitting an RA request, let alone "periodic communication" about the status of their requests.

84.    The Defendants are therefore unlawfully withholding and delaying mandatory agency action, and their failure to provide a functioning threshold process for evaluating accommodation requests in a manner as required by law has no basis in any federal statute, regulation, or the agencies' internal procedures.

**Count II: NTEU is entitled to mandamus relief to compel the Defendants to perform the threshold duties mandated by law and their own reasonable accommodation procedures.**

85.    NTEU realleges all preceding paragraphs and incorporates them herein.

86.    District courts may compel a federal agency to perform a duty owed to the plaintiff. 28 U.S.C. § 1361

87.    Federal regulations require agencies to adopt and implement reasonable accommodation procedures with specific procedural steps. 29 C.F.R. § 1614.203(d)(3)(i)(A)–(W). Those obligations are further reflected in HHS Policy 126-1 and Treasury's Faulkender Memorandum.

88.    The agencies cannot depart from the regulations' mandatory procedural requirements without legal consequence.

89.    Employees with disabilities are entitled to the threshold process that the Rehabilitation Act and EEOC regulations require agencies to maintain, including, at minimum:

  a.    Notice of the contact information for the individual or program office from whom requesters will receive a final decision;

  b.    Supervisors who have been guided on how to recognize requests for reasonable accommodations;

  c.    Decision makers who communicate with requesters in an interactive process;

  d.    Clear guidelines establishing when the agency may require more medical documentation and to whom that documentation should be submitted;

  e.    Firm deadlines for issuing written decisions on accommodation requests, including interim decisions;

22

f.      Notice to the employee that the agency's failure to timely process an accommodation request may constitute a violation of the Rehabilitation Act;

g.      Notification from the agency as to the reason for any delays in processing employees' requests for reasonable accommodations.

90.    The IRS, Treasury, and HHS are failing to perform these nondiscretionary obligations. As explained above, employees who submit RA requests often receive no acknowledgment, no routing confirmations, and no decision, while facing prolonged delays that prevent them from accessing the process the law requires.

91.    No adequate alternative remedy in a court exists to compel the systemic, prospective relief sought here. Individual EEO complaints and MSPB appeals address the merits of specific accommodation decisions; they do not provide a mechanism to compel the agencies to restore and maintain threshold processing procedures that federal law requires across all pending requests. *See* 5 U.S.C. § 704.

## REQUEST FOR RELIEF

Wherefore, Plaintiff NTEU requests judgment against the Defendants:

A.      Declaring that the Defendants have unlawfully withheld actions that they are required to take from employees who have requested telework as a reasonable accommodation;

B.      Declaring that the Defendants have unreasonably delayed actions that they are required to take in processing reasonable accommodation requests from

23

employees who have requested telework as their accommodation;

C.    Ordering the Defendants to perform the following steps for all pending telework-based reasonable accommodation requests submitted by bargaining-unit employees:

1.    Inventory. Within 20 calendar days of the order, provide to the Court a certified accounting of all pending telework-based reasonable accommodation requests submitted by bargaining-unit employees, including each request's submission date, current routing status, and whether any interim accommodation determination has been made.

2.    Routing. For any request not already assigned to the designated Reasonable Accommodation Coordinator or Program Office, complete routing within 10 calendar days of the inventory submission, consistent with HHS Policy 126-1 §§ 60(E), 60(G)–(H) (requiring routing within five calendar days) and the IRS's Faulkender Memorandum (requiring routing through the appropriate Reasonable Accommodation Coordinator).

3.    Documentation Identification. Within 10 calendar days of routing, provide each employee requesting a reasonable accommodation with written notice of whether additional medical or other documentation is required and, if so, specific identification of what documentation is missing, to whom it should be submitted, and in what manner it should be submitted.

24

4.    <u>Interim Accommodation</u>. Within 15 calendar days of routing, apply existing interim-accommodation procedures to each pending request, consistent with 29 C.F.R. § 1614.203(d)(3)(i)(Q) and, if applicable, the Faulkender Memorandum's authorization of ninety-day interim accommodations. Further, where the known facts make entitlement to accommodation reasonably likely, that the Defendants must provide interim accommodation pending a final decision, consistent with agency policy, unless a specific written determination explains why interim accommodation is not warranted.

5.    <u>Medical Information Handling</u>. Ensure that medical documentation is requested, received, maintained, and disclosed only through channels authorized by 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C), 29 C.F.R. § 1630.14(c)(1), the Faulkender Memorandum, and/or HHS Policy 126-1 § 70(E)(4), and that supervisors do not directly request, receive, or maintain medical documentation where agency policy or federal law prohibits that practice.

6.    <u>Written Decisions</u>. Issue a written decision within 45 calendar days after receipt of complete documentation or provide a written status explanation at 30-day intervals where a decision cannot be issued within that period, identifying the specific reason for additional time and an estimated completion date.

7.    <u>Compliance Reporting</u>. File limited compliance reports with the

25

court at 60-day intervals, sufficient to confirm routing completion, documentation-review status, interim-accommodation determinations, and decision issuance, without disclosing protected medical information to NTEU or the court except under seal where the parties agree or the court requires.

D.    Granting a writ of mandamus ordering the Defendants to perform the steps listed in paragraph C;

E.    Ordering the Defendants to pay attorney's fees and costs in this action; and

F.    Granting such other relief as the Court deems just and appropriate.

June 29, 2026                                      Respectfully submitted,

                                                  PARAS N. SHAH
                                                  D.C. Bar No. 983881
                                                  General Counsel

                                                  ALLISON C. GILES
                                                  D.C. Bar No. 439705
                                                  Associate General Counsel

                                                  JESSICA HORNE
                                                  D.C. Bar No. 1029732
                                                  Assistant Counsel

                                                  NOAH BROZINSKY
                                                  D.C. Bar No. 1655789
                                                  Assistant Counsel

                                                  THAXTON BLAISE SPRINGFIELD
                                                  D.C. Bar No. 90019358
                                                  Assistant Counsel

26

*/s/Noah Brozinsky*
NOAH BROZINSKY
D.C. Bar No. 1655789
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5500

*Counsel for Plaintiff*

27