UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES UNION,

*Plaintiff*,

v.

INTERNAL REVENUE SERVICE, *et al.*,

*Defendants*.

Civil Action No. 26-2299 (RCL)

**MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS


Table of Contents .......... i

Table of Authorities .......... ii

Background .......... 2

Legal Standards .......... 3

I. Lack of subject-matter jurisdiction .......... 3

II. Failure to state a claim .......... 3

Argument .......... 4

I. NTEU's alleged standing is derivative of members who themselves are precluded from asserting employment-related claims under the APA or Mandamus Act. .......... 4

A. The comprehensive remedial scheme applicable to the Rehabilitation Act precludes a federal employee from asserting employment-related claims under the APA or Mandamus Act. .......... 4

B. NTEU lacks standing to bring a suit that its members could not bring. .......... 6

II. Section 704 independently bars Count I because the Rehabilitation Act provides an adequate remedy in court. .......... 10

III. Count I also fails under § 706(1) because it identifies no discrete action that the law requires. .......... 14

IV. Count II fails because NTEU has an adequate remedy and identifies no clear duty. .......... 16

Conclusion .......... 17

## TABLE OF AUTHORITIES

Cases

*Adams v. Rice*,
531 F.3d 936 (D.C. Cir. 2008) .......... 4, 5, 11

*AFGE v. Sec'y of the Air Force*,
716 F.3d 633 & n.5 (D.C. Cir. 2013) .......... 5

*Alabama-Coushatta Tribe of Tex. v. United States*,
757 F.3d 484 (5th Cir. 2014) .......... 14

*Am. Chemistry Council v. Dep't of Transp.*,
468 F.3d 810 (D.C. Cir. 2006) .......... 7

*Am. Forest Res. Council v. United States*,
77 F.4th 787 (D.C. Cir. 2023) .......... 14

*Am. Freedom Law Ctr. v. Obama*,
821 F.3d 44 (D.C. Cir. 2016) .......... 6

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Ass'n of Am. Med. Colls. v. Califano*,
569 F.2d 101 (D.C. Cir. 1977) .......... 10

*Ass'n of Flight Attendants-CWA*,
493 F.3d 155 (D.C. Cir. 2007) .......... 16

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) .......... 3, 4

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .......... 11

*Brown v. GSA*,
425 U.S. 820 (1976) .......... 4-5, 5, 10

*Citizens for Const. Integrity v. Census Bureau*,
115 F.4th 618 (D.C. Cir. 2024) .......... 6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 6

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
709 F.2d 1521 (D.C. Cir. 1983) .......... 12, 14, 16

*Croce v. Garland*,
Civ. A. No. 21-0264 (RC), 2021 WL 5206106 (D.D.C. Nov. 9, 2021) ........................ 8-9, 10

*Ctr. for Biological Diversity v. Zinke*,
260 F. Supp. 3d 11 (D.D.C. 2017) ........................................................................ 15

*Cutler v. Dep't of Health & Hum. Servs.*,
797 F.3d 1173 (D.C. Cir. 2015) .......................................................................... 7

*Davis v. FEC*,
554 U.S. 724 (2008) ............................................................................................ 6

*Doak v. Johnson*,
798 F.3d 1096 (D.C. Cir. 2015) .................................................................... 4, 9, 10

*Dominguez v. UAL Corp.*,
666 F.3d 1359 (D.C. Cir. 2012) .......................................................................... 6

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) ............................................................................................... 5

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ........................................................ 5, 6, 8, 11, 12, 13

*Grant v. Dep't of the Treasury*,
194 F. Supp. 3d 25 (D.D.C. 2016) ................................................................. 11-12

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992) ............................................................................ 3

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ............................................................................................ 3

*Jerome Stevens Pharms., Inc. v. FDA*,
402 F.3d 1249 (D.C. Cir. 2005) .......................................................................... 3

*Khadr v. United States*,
529 F.3d 1112 (D.C. Cir. 2008) .......................................................................... 3

*Kizas v. Webster*,
707 F.2d 524 (D.C. Cir. 1983) ....................................................................... 5, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................................ 6

*Mogenhan v. Napolitano*,
613 F.3d 1162 (D.C. Cir. 2010) .......................................................................... 8

*N.Y. State Club Ass'n v. City of New York*,
487 U.S. 1 (1988) ............................................................................................ 7, 8

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 14, 15, 16

*Reid v. Hurwitz*,
920 F.3d 828 (D.C. Cir. 2019) .......... 3

*Seneca v. Price*,
257 F. Supp. 3d 95 (D.D.C. 2017) .......... 11

*Shirey v. Devine*,
670 F.2d 1188 (D.C. Cir. 1982) .......... 11

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) .......... 7

*Spinelli v. Goss*,
446 F.3d 159 (D.C. Cir. 2006) .......... 9

*Stewart v. Musk*,
Civ. A. No. 25-1288 (CRC), 2026 WL 377509 (D.D.C. Feb. 11, 2026) .......... 5, 10

*United States v. Fausto*,
484 U.S. 439 (1988) .......... 5

*Ward v. McDonald*,
762 F.3d 24 (D.C. Cir. 2014) .......... 8

*Women's Equity Action League v. Cavazos*,
906 F.2d 751 (D.C. Cir. 1990) .......... 13, 14, 16

Statutes

5 U.S.C. § 704 .......... 10, 11

5 U.S.C. § 706 .......... 2, 14, 15

28 U.S.C. § 1361 .......... 2, 3, 16

29 U.S.C. § 791 .......... 1, 4

29 U.S.C. § 791a .......... 2

29 U.S.C. § 794a .......... 1, 4, 10, 11, 12

42 U.S.C. § 2000e-5 .......... 11

Section 501 .......... 1, 2, 4, 5, 11

Rules

Fed. R. Civ. P. 12 .......... 1, 3, 10

Regulations

29 C.F.R. Part 1630 .......... 9

29 C.F.R. § 1614.105 .................... 4
29 C.F.R. § 1614.106 .................... 4
29 C.F.R. § 1614.203 .................... 2, 8, 14, 15
29 C.F.R. § 1614.204 .................... 10, 13
29 C.F.R. § 1614.407 .................... 4, 12

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), Defendants the Internal Revenue Service ("IRS"), the Department of the Treasury ("Treasury"), and the Department of Health and Human Services ("HHS") ("Defendants"), by and through counsel, respectfully move to dismiss the Complaint for Mandamus, Injunctive, and Declaratory Relief filed by Plaintiff National Treasury Employees Union ("NTEU").

NTEU asks the Court to order Defendants to process pending requests by federal employees for telework as a reasonable accommodation, on a schedule NTEU proposes. Compl. ¶ 11 & Request for Relief ¶ C. NTEU's claim is, in essence, a failure-to-accommodate claim arising under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791. Congress directed such employment-related claims into the federal-sector equal employment opportunity ("EEO") process, with suit in district court only after that process has been exhausted. 29 U.S.C. § 794a(a)(1). NTEU instead pleads the claim under the Administrative Procedure Act ("APA") (Count I) and mandamus (Count II).

The Complaint should be dismissed because claims of discrimination in federal employment, including denials of alleged accommodation requests, are subject to the comprehensive remedial schemes established by Congress in the various employment discrimination statutes, including Section 501 of the Rehabilitation Act, which incorporates the remedial provisions of Title VII of the Civil Rights Act and the Americans with Disabilities Act ("ADA"). Courts have held that remedial scheme to be the exclusive means by which a federal-sector employee can raise such employment-related disputes and that claims based on other statutes, including the APA and mandamus statute, are precluded on that basis. NTEU cannot circumvent that comprehensive remedial scheme by bringing an APA and mandamus claim purportedly on behalf of its federal employee members who themselves are precluded from doing

so. Whether analyzed under Rule 12(b)(1) as a lack of standing or under Rule 12(b)(6) based on, among other things, the availability of that comprehensive remedial scheme, NTEU's claims fail and should be dismissed.

## BACKGROUND

NTEU is a labor organization that represents IRS and HHS employees and sues "on behalf of its members." Compl. ¶¶ 16–17. NTEU alleges that the IRS, Treasury (the IRS's parent department), and HHS are failing to process employees' requests for telework as a reasonable accommodation, in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. § 791a, its implementing regulation, 29 C.F.R. § 1614.203(d), and the agencies' own procedures. Compl. ¶¶ 2, 6–9, 19–21, 54, 64, 81–82. NTEU states that this case "does not challenge the denial of specific reasonable accommodation requests or the wisdom of the Defendants' new procedures." *Id.* ¶ 10.

In June 2025, Treasury issued a "Reasonable Accommodation Guidance" memorandum (Faulkender Mem.) describing its process, including "[m]andatory review timelines" for deciding officials. Compl. ¶¶ 43, 44(d). In September 2025, HHS issued Policy 126-1, which includes a five-calendar-day routing period. *Id.* ¶¶ 48–49. NTEU alleges that requests are going unprocessed. NTEU cites a backlog of more than 5,800 IRS requests in May 2025 and press reports of a backlog of more than 9,000 HHS requests by April 2026. *Id.* ¶¶ 38, 40, 67. NTEU also identifies three members, Benita Brown (IRS) and Shakira Williams and Shazma Aftab (HHS), whose accommodation requests allegedly went unanswered or remain pending. *Id.* ¶¶ 56–59, 70–71, 74–77. The Complaint does not allege that NTEU or any member filed an EEO complaint.

Count I alleges that Defendants are "unlawfully withholding and unreasonably delaying" action required by Section 501 and § 1614.203(d), in violation of 5 U.S.C. §§ 706(1) and 555(b). Count II seeks mandamus under 28 U.S.C. § 1361. Compl. ¶¶ 79–82, 86–90. NTEU asks the

Court to declare that Defendants have withheld and delayed required action and to order them, for all pending telework-based requests by employees of Defendants, to certify an inventory of those requests to the Court, complete specified routing, documentation, interim-accommodation, and medical-information steps, issue written decisions within 45 days after receiving complete documentation (or explain any delay at 30-day intervals), and file compliance reports every 60 days. *Id.*, Request for Relief ¶¶ A–D.

## LEGAL STANDARDS

### I. <u>Lack of subject-matter jurisdiction</u>

A claim warrants dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the court's subject-matter jurisdiction. *See, e.g.*, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). A plaintiff "must allege well-pleaded facts that support a plausible inference" of subject-matter jurisdiction. *Reid v. Hurwitz*, 920 F.3d 828, 837 (D.C. Cir. 2019). Generally, "a district court considering a motion to dismiss for lack of subject matter jurisdiction accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). In deciding a motion under Rule 12(b)(1), the Court may consider materials outside the pleadings. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### II. <u>Failure to state a claim</u>

Dismissal is proper for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court may consider the complaint, its attachments, and documents it incorporates by reference. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The Faulkender Memorandum, which the Complaint cites and quotes but does not attach, Compl. ¶¶ 43–46, 87, is submitted as Exhibit A to this motion and may be considered. It is "integral" to NTEU's claims and may be considered without converting the motion. *Banneker*, 798 F.3d at 1133.

## ARGUMENT

### I. NTEU's alleged standing is derivative of members who themselves are precluded from asserting employment-related claims under the APA or Mandamus Act.

#### A. The comprehensive remedial scheme applicable to the Rehabilitation Act precludes a federal employee from asserting employment-related claims under the APA or Mandamus Act.

Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which NTEU invokes as the source of the "primary withheld action," *see* Compl. ¶¶ 6–7, 23, 81, governs the employment of individuals with disabilities by federal agencies. The "remedies, procedures, and rights" of Title VII's federal-sector provision apply to claims under it. 29 U.S.C. § 794a(a)(1); *see also Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008) (applying ADA employment discrimination standards for a failure to accommodate to claims under the Rehabilitation Act). Under those procedures, an employee who believes that an agency has failed to accommodate his or her disability consults an EEO Counselor, 29 C.F.R. § 1614.105(a), may file a complaint with the agency, *id.* § 1614.106(a), and may sue after final agency action or, if there is none, "[a]fter 180 days from the date of filing" the complaint. *Id.* § 1614.407(a)–(b); *see Doak v. Johnson*, 798 F.3d 1096, 1099–1100 (D.C. Cir. 2015).

Congress made this comprehensive remedial scheme, along with its counterpart the Civil Service Reform Act ("CSRA"), the exclusive mechanism for federal-sector employees to raise

legal challenges related to their federal employment. *Brown v. GSA*, 425 U.S. 820, 829 (1976) (Title VII); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–13 (2012) (CSRA). The Supreme Court has held that the scheme established by Title VII, which is incorporated into the Rehabilitation Act, is "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," and that it "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown*, 425 U.S. at 829, 835.

The D.C. Circuit has accordingly barred claims based on "other federal legislation," because covered employees "may not circumvent the 'careful and thorough remedial scheme' Congress ordered for them; their access to court is determined by that effective, albeit demanding, statute." *Kizas v. Webster*, 707 F.2d 524, 542–43 (D.C. Cir. 1983) (quoting *Brown*, 425 U.S. at 833); *cf. United States v. Fausto*, 484 U.S. 439, 455 (1988) (the "comprehensive system for reviewing personnel action taken against federal employees" under the CSRA bars employees from seeking review under other federal statutes); *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 639 & n.5 (D.C. Cir. 2013) (a union that "asserts only the rights of its member-employees" cannot file a suit outside the CSRA "simply because it cannot do so under the CSRA").

The Rehabilitation Act extends that federal-sector scheme to § 501 claims, *Adams*, 531 F.3d at 943, and Counts I and II are such claims pleaded under the APA and the Mandamus Act. *See Stewart v. Musk*, Civ. A. No. 25-1288 (CRC), 2026 WL 377509, at *4 (D.D.C. Feb. 11, 2026) (APA claims that "fundamentally concern [the plaintiff's] reasonable accommodation" are Rehabilitation Act claims, and "[p]arties cannot simply rename Rehabilitation Act claims" (quoting *Welch v. Powell*, Civ. A. No. 16-0509 (RC), 2016 WL 6806211, at *5 (D.D.C. Nov. 17, 2016))). In *Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009), the court likewise treated an APA claim that an agency failed to investigate discrimination complaints as "inextricably linked" to the

underlying discrimination claims and dismissed the APA claim on that basis. *Id.* at 526–27. A claim that an agency failed to process accommodation requests is linked in the same way.

**B. NTEU lacks standing to bring a suit that its members could not bring.**

In Counts I and II, NTEU, purportedly on behalf of its members, seeks to circumvent the comprehensive remedial scheme for employment-related discrimination claims that Congress provided by asserting claims under the APA and mandamus statute. However, its members are precluded from bringing such claims related to their employment and, because NTEU's standing is derivative of that of its members (Compl. ¶ 17), NTEU likewise is precluded from asserting such claims.

Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III. *Ariz. Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 133–34 (2011); *Dominguez v. UAL Corp.,* 666 F.3d 1359, 1361 (D.C. Cir. 2012). To establish standing, the plaintiff must demonstrate that it suffered an injury-in-fact, specifically an injury that is "'concrete, particularized, and actual or imminent;'" that the injury is "'fairly traceable to the challenged action;'" and that it is "likely," not speculative, that the injury is "'redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

NTEU bears the burden of establishing each element. *Lujan,* 504 U.S. at 561. Standing, moreover, is "'not dispensed in gross.'" *Davis v. FEC*, 554 U.S. 724, 734 (2008). "Rather, 'a plaintiff must demonstrate standing for each claim [it] seeks to press' and 'for each form of relief' that is sought." *Id.*; *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 52 (D.C. Cir. 2016) (dismissing Equal Protection claim for lack of standing); *Citizens for Const. Integrity v. Census Bureau*, 115 F.4th 618, 630 (D.C. Cir. 2024) (dismissing a mandamus claim for lack of standing). To meet its burden of establishing standing at the pleadings stage, Plaintiff must "make a plausible

allegation of facts establishing each element of standing." *Cutler v. Dep't of Health & Hum. Servs.,* 797 F.3d 1173, 1179 (D.C. Cir. 2015).

NTEU acknowledges that its alleged standing is derivative of that of its members. Indeed, NTEU asserts that it has brought this suit "on behalf of its members who have been injured by the inaction and violations of law described in this Complaint." Compl. ¶ 17. It is well settled that an organization may have standing to bring suit on behalf of its members, but only if its members would otherwise have standing to sue in their own right. *See, e.g., Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002); *Am. Chemistry Council v. Dep't of Transp.,* 468 F.3d 810, 815 (D.C. Cir. 2006).

NTEU identifies three members, Benita Brown (IRS) and Shakira Williams and Shazma Aftab (HHS), whose requests allegedly went unanswered or remain pending. Compl. ¶¶ 56–59, 70–71, 74–77. Because these three individuals are precluded by the comprehensive remedial scheme applicable to the Rehabilitation Act from asserting an employment-related claim under the APA or the Mandamus Act, NTEU lacks standing to assert such claims purportedly on their behalf. That is because "an association has standing to sue on behalf of its members when those members would have standing to bring the same suit," *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1988) (citing *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977)), and when members could not have brought the same suit—as here—standing is lacking. "It does not matter what specific analysis is necessary to determine that the members could bring the same suit[.]" *Id*. The "same suit" requirement "weed[s] out plaintiffs who try to bring cases, which could not otherwise be brought, by manufacturing allegations of standing that lack any real foundation." *Id.*

The "same suit" here is a suit under the APA and the Mandamus Act to compel the agencies to process members' accommodation requests. No member could bring that suit. A member's claim that the agency failed to reasonably accommodate her disability is a Rehabilitation Act claim. The comprehensive scheme for addressing claims of discrimination in federal employment is the exclusive scheme for such claims. NTEU cannot satisfy the "same suit" requirement by pointing to members who could bring a different suit (i.e., an individual Rehabilitation Act action after administrative exhaustion) instead of the one NTEU has brought under the APA and Mandamus Act. Because NTEU's members could not bring that suit—which is barred by the comprehensive remedial scheme governing claims related to federal employment—NTEU likewise lacks standing to bring that suit on their behalf. *N.Y. State Club Ass'n,* 487 U.S. at 9.

And there is no question that NTEU's Complaint describes a failure-to-accommodate claim to which this comprehensive remedial scheme applies. *See Garcia*, 563 F.3d at 526–27. NTEU alleges that the agencies have not acted on pending requests for telework as a reasonable accommodation. It alleges, among other things, that requests are not routed, requesters are not told what is happening, interim accommodations are not considered, and decisions are not issued. Compl. ¶¶ 3–9, 65–66. It alleges injuries to employees whose requests went unanswered, who exhausted their leave, lost pay, or were marked absent without leave. *Id.* ¶¶ 3–4. While NTEU disclaims any challenge to the denial of a particular request, *id.* ¶ 10, a failure to act on a request is effectively a denial. A party that "obstructs or delays the interactive process is not acting in good faith," *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (quotation marks omitted), and "there are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable under the ADA,'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (citations omitted); *see also* 29 C.F.R. § 1614.203(d)(3)(i)(O) (failure "to

provide the accommodation in a prompt manner may result in a violation of the Rehabilitation Act"); *Croce v. Garland*, Civ. A. No. 21-0264 (RC), 2021 WL 5206106, at *9 (D.D.C. Nov. 9, 2021) (an agency "cannot avoid its obligations by opting out of decision-making altogether"). Indeed, Treasury's Office of Civil Rights and EEO describes the failure to timely provide a reasonable accommodation as "a frequently cited basis for formal EEO complaints." Compl. Attach. A at 2. Treasury's guidance frames the process the same way: requests are processed by a Reasonable Accommodation Coordinator, who "will facilitate the interactive process with the employee's supervisor in accordance with 29 C.F.R. Part 1630." Faulkender Mem. at 1 (Ex. A); Compl. ¶ 44(a).

NTEU, however, has not asserted a claim under the Rehabilitation Act on behalf of its members. Nor could it do so because it has not alleged that any member has even attempted to exhaust the applicable administrative process. The wholesale failure to exhaust administrative remedies under the Rehabilitation Act deprives the Court of jurisdiction. *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *Doak*, 798 F.3d at 1104 ("Because the plaintiff in *Spinelli* never filed an administrative complaint, there was never any final administrative disposition of a complaint, or any reviewable final administrative action at all. . . . Under those circumstances, *Spinelli* held that the court lacked jurisdiction over the plaintiff's claims.").

NTEU acknowledges that the EEO process exists and simply contends that it is inadequate. Compl. ¶ 91. The Complaint states that individual EEO complaints and Merit Systems Protection Board appeals "address the merits of specific accommodation decisions" and provide no "mechanism to compel the agencies to restore and maintain threshold processing procedures . . . across all pending requests." Compl. ¶ 91. That is a futility argument that fails for two reasons. First, *Spinelli* forecloses it. 446 F.3d at 162. The D.C. Circuit has "grave doubts whether any

futility doctrine can be stretched to sanction court adjudication of a Title VII action when no party to the action has ever filed an initial charge with the agency." *Kizas*, 707 F.2d at 544–45; *cf. Ass'n of Am. Med. Colls. v. Califano*, 569 F.2d 101, 108, 110–12 (D.C. Cir. 1977) (association's APA and mandamus challenge to agency regulations had to proceed through the statutory review process under the Medicare Act, even assuming the agency's review board could not grant the relief sought). Second, the premise is wrong, because the EEO process indeed reaches agency policies and practices. A class complaint may challenge "an agency personnel management policy or practice" that discriminates on the basis of disability, 29 C.F.R. § 1614.204(a)(1). The decision may include "systemic relief for the class," *id.* § 1614.204(i), and when discrimination is found, "an agency must eliminate or modify the employment policy or practice out of which the complaint arose," *id.* § 1614.204(l)(1). The EEO process also addresses delay, as it extends to employees aggrieved "by the failure to take final action" on a complaint. 29 U.S.C. § 794a(a)(1). As the D.C. Circuit explained, an aggrieved can file in federal court "[o]nce that process concludes or stalls." *Doak*, 798 F.3d at 1100. *See also Croce*, 2021 WL 5206106, at *1–2 (describing EEO investigation of a claim that an agency component had not responded to a request).

NTEU's choice instead to plead that claim under the APA and the Mandamus Act does not change what the claim is or where Congress required it to be brought. Congress did not design the federal-sector scheme "to be circumvented by artful pleading." *Brown*, 425 U.S. at 833; *Stewart*, 2026 WL 377509, at *4 (applying the same principle to reasonable accommodation claims pleaded under the APA). Accordingly, the Complaint should be dismissed for lack of standing.

## II. <u>Section 704 independently bars Count I because the Rehabilitation Act provides an adequate remedy in court.</u>

Even if NTEU had standing, Count I would fail to state a claim under Rule 12(b)(6). Review under the APA is available only where "there is no other adequate remedy in a court," 5

U.S.C. § 704, which reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).

An alternative remedy is adequate if it offers relief of "the same genre," even if the relief is not identical, and relief is adequate "where a statute affords an opportunity for de novo district-court review" of the agency action. *Garcia*, 563 F.3d at 522–23 (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1270, 1272 (D.C. Cir. 2005)). Courts may restrict access to APA review "only upon a showing of clear and convincing evidence of a contrary legislative intent." *Id.* at 523 (citation omitted).

Section 794a(a)(1) supplies an adequate alternative remedy to NTEU's members, thereby precluding NTEU from purporting to sue under the APA on their behalf. Section 794a(a)(1) makes the "remedies, procedures, and rights" of Title VII's federal-sector provision "available, with respect to any complaint under [§ 501]," to an employee "aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint." 29 U.S.C. § 794a(a)(1); *see also Adams*, 531 F.3d at 943 (applying ADA employment discrimination standards for a failure to accommodate to claims under the Rehabilitation Act). If the employee sues in federal court, de novo review applies. *Shirey v. Devine*, 670 F.2d 1188, 1198 (D.C. Cir. 1982). The court may enjoin the unlawful practice and order "such affirmative action as may be appropriate." 42 U.S.C. § 2000e-5(g)(1) (applied by § 794a(a)(1)). The court may consider "the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy." 29 U.S.C. § 794a(a)(1). Courts in this district have applied § 704 accordingly. *Seneca v. Price*, 257 F. Supp. 3d 95, 96, 98–99 (D.D.C. 2017) (Title VII civil action is an adequate remedy that bars APA

challenge to agency's handling of the EEO process); *see also Grant v. Dep't of the Treasury*, 194 F. Supp. 3d 25, 30 (D.D.C. 2016) (an APA challenge fails "when there is an 'adequate remedy' against the employing agency, such as a cause of action under Title VII and the Rehab Act").

An alternative remedy can be less effective than an APA lawsuit and still be an adequate remedy. In *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) (en banc), the D.C. Circuit denied an APA claim against a federal agency for failure to remedy discrimination by recipients of federal revenue-sharing funds where Congress had provided a private right of action against those recipients in the Revenue Sharing Act. Plaintiffs whose administrative complaints were not timely processed and resolved sought a nationwide injunction against Treasury under the APA, arguing that the Revenue Sharing Act's alternative remedy was inadequate. *Id.* at 1531–32. The court explained that "[e]ven if we agreed that one nationwide suit would be more effective than several [private Revenue Sharing Act] suits, that does not mean that the remedy provided by Congress is inadequate." *Id.* at 1532. *Garcia* applied *Council* to an agency's failure to process discrimination complaints. The plaintiffs in *Garcia* sought to require the agency to process complaints properly and "develop a better processing system." 563 F.3d at 523. The court denied the APA claim, explaining that a discrimination claim filed directly against the agency "affords a better remedy" than the third-party suits in *Council*, as plaintiff "can obtain declaratory and injunctive relief against the agency itself." *Id.* at 525.

The same is true here. An employee who alleges that an agency has failed to act on a reasonable accommodation request may obtain relief against the agency itself that addresses the conduct at issue that NTEU alleges. Moreover, the employee can sue in federal court if the agency has not taken a final action 180 days after the employee files a complaint. 29 C.F.R. § 1614.407(b); 29 U.S.C. § 794a(a)(1). The fact that NTEU's members have not alleged that they have used the

EEO process does not make it inadequate. *See Garcia*, 563 F.3d at 524 (holding that plaintiffs were "barred from relying on the APA to obtain relief they chose to forego").

NTEU asserts that individual complaints "do not provide a mechanism to compel the agencies to restore and maintain threshold processing procedures that federal law requires across all pending requests." Compl. ¶ 91. The D.C. Circuit has rejected that argument. An alternative remedy may be adequate even though it "cannot redress the systemic lags and lapses by federal monitors," because "situation-specific litigation affords an adequate, even if imperfect, remedy." *Garcia*, 563 F.3d at 525 (quoting *Women's Equity Action League v. Cavazos* ("*WEAL*"), 906 F.2d 742, 751 (D.C. Cir. 1990)). The question "is not whether [the alternative remedy is] as effective as an APA lawsuit against the regulating agency, but whether the . . . remedy provided by Congress is adequate." *Id.* And, as explained above, the premise is mistaken in any case, because the EEO process reaches agency policies and practices. *See* 29 C.F.R. § 1614.204(a)(1), (i), (l)(1).

NTEU also asserts that individual complaints "address the merits of specific accommodation decisions" and not the agencies' processing procedures. Compl. ¶ 91. The D.C. Circuit rejected essentially the same distinction in *Garcia*, explaining that "[t]he fact that appellants fault the USDA's regulation of itself and not its regulation of a third party does not mean that *Council* and its progeny are inapposite." 563 F.3d at 525.

Finally, NTEU's status as a union does not make the remedy inadequate. It is suing "on behalf of its members," Compl. ¶ 17, who hold the individual claims and who may seek systemic relief through a class complaint, with suit in federal court available after 180 days. 29 C.F.R. §§ 1614.204(i), 1614.407(b). Because Congress provided an adequate remedy, Count I fails to state a claim. The same conclusion forecloses Count II, as "a determination that an APA action is barred

by another remedy therefore demands the further conclusion that mandamus is not available." *WEAL*, 906 F.2d at 752; *see Council*, 709 F.2d at 1533.

## III. Count I also fails under § 706(1) because it identifies no discrete action that the law requires.

Count I fails to state a claim under § 706(1) for the relief NTEU seeks. Section 706(1) permits a court to "compel agency action unlawfully withheld or unreasonably delayed." But "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004) (emphasis omitted). The agency actions that can properly be challenged under the APA are those that are "circumscribed [and] discrete." *Id.* at 62. The APA thus contains "a prohibition on programmatic challenges," meaning "challenges that seek 'wholesale improvement' of an agency's programs by court decree." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014) (quoting *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000)); *Am. Forest Res. Council v. United States*, 77 F.4th 787, 805 (D.C. Cir. 2023) (rejecting a "blunderbuss challenge" in which the plaintiffs "complain not that the Secretary failed to take a specific action but rather that she failed to carry out the . . . Act's general directives"). Moreover, the requirement that the action be required "rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *SUWA*, 542 U.S. at 65. A delay claim is subject to the same limits, because "a delay cannot be unreasonable with respect to action that is not required." *Id.* at 63 n.1.

The regulation that Count I primarily relies on does not impose the duties NTEU seeks to enforce. Section 1614.203(d) requires each agency to "adopt and implement a Plan" that requires reasonable accommodation procedures with specified content, 29 C.F.R. § 1614.203(d), (d)(3)(i), and it assigns to the Commission the review of whether an agency has done so, *id.* § 1614.203(e)–

(f). The Complaint alleges that Treasury and HHS have issued written procedures, Compl. ¶¶ 43–53, and disclaims any challenge to "the wisdom of the Defendants' new procedures," *id.* ¶ 10. It does not identify which element of § 1614.203(d)(3)(i) either agency's procedures omit. NTEU's claim is that the agencies are not following them. Compl. ¶ 81 ("failure to operate the procedural plans"); ¶ 84 (failure to provide "a functioning threshold process"). Insofar as that claim concerns individual employees' requests, it is the failure-to-accommodate claim discussed above. Insofar as it asks the Court to order generalized compliance with § 1614.203(d), it lacks the discreteness § 706(1) requires. "General deficiencies in compliance . . . lack the specificity requisite for agency action." *SUWA*, 542 U.S. at 66. And a provision that "contains only a general follow-the-law directive . . . flunks *SUWA*'s discreteness test," *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 27 (D.D.C. 2017) (quoting *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 891 (D.C. Cir. 2014)).

Some of the specific relief NTEU requests has no source in any statute or regulation the Complaint cites. None requires an agency to certify to a court an inventory of pending requests, Compl., Request for Relief ¶ C.1, to meet the deadlines NTEU proposes, *id.* ¶¶ C.1–C.4, C.6, or to file compliance reports every sixty days, *id.* ¶ C.7. The regulation addresses timing only by requiring an agency's procedures to "[d]esignate the maximum amount of time the agency has, absent extenuating circumstances, to either provide a requested accommodation or deny the request." 29 C.F.R. § 1614.203(d)(3)(i)(M). That leaves the period to the agency, and a court may order only "what the law requires, but no more." *Zinke*, 260 F. Supp. 3d at 21; *see also SUWA*, 542 U.S. at 65 ("[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.").

The Complaint's remaining sources are the agencies' own internal policies, including Treasury's "Reasonable Accommodation Guidance" memorandum and HHS Policy 126-1. Compl. ¶¶ 43–53, 87. Those are not regulations with the force of law. *C.f. SUWA*, 542 U.S. at 69, 72 (a land use plan's statements that the agency "will" take certain actions are "not a legally binding commitment enforceable under § 706(1)" "absent clear indication of binding commitment in the terms of the plan"). Count I should therefore be dismissed to the extent it rests on a generalized demand for a "functioning threshold process" or seeks an inventory, reports, and deadlines that no statute or regulation requires.

**IV. <u>Count II fails because NTEU has an adequate remedy and identifies no clear duty.</u>**

Mandamus under 28 U.S.C. § 1361 is "an extraordinary remedy." *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 159 (D.C. Cir. 2007). It is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Council*, 709 F.2d at 1533. Count II fails on the second and third elements.

First, Congress provided an adequate remedy. As discussed above, the Rehabilitation Act's remedial scheme is adequate, and therefore "mandamus is not available." *WEAL*, 906 F.2d at 752; *Council*, 709 F.2d at 1533. NTEU also does not allege that any member used that process. In *Ass'n of Flight Attendants-CWA*, unions that had "not exhausted their administrative remedies" could not "show that they are clearly entitled to relief or that they have no other adequate remedy." 493 F.3d at 160.

Second, NTEU identifies no clear duty. Count II rests on the same regulation, the same internal policies, and the same requested relief as Count I. Compl. ¶¶ 87–89, Request for Relief ¶ D. To the extent it seeks the inventory, reports, and deadlines discussed above, no statute or

regulation supplies a clear duty to provide them, and to the extent it seeks action on specific requests, the alternative remedy (discussed above) is adequate. Count II should be dismissed.

**CONCLUSION**

For these reasons, the Complaint should be dismissed with prejudice.

Dated: October 7, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *　/s/ David S. Bettwy*
DAVID S. BETTWY, D.C. Bar #155148
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2410

*Attorneys for the United States of America*